The design of the legislature to create a court of justice for the village of Corning, with limited civil jurisdiction, is plain enough. The main question involved is one of legislative authority. That alone I propose to examine. *Page 303 
The law-making power of the state recognizes no restraints and is bound by none, except such as are imposed by the constitution. That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity, and is therefore the paramount law. Its object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations the power to make laws would be absolute. These limitations are created and imposed by express words, or arise by necessary implication. The leading feature of the constitution is the separation and distribution of the powers of the government. It takes care to separate the executive, legislative and judicial powers, and to define their limits. The executive can do no legislative act, nor the legislature any executive act, and neither can exercise judicial authority. That has been entrusted to the courts created in the sixth article, and to such other inferior tribunals as the legislature see fit to establish in certain municipal corporation, designated in the latter clause of the fourteenth section of the same article. The legislature cannot create another court with the appellate jurisdiction of the Court of Appeals, or with the general original jurisdiction of the Supreme Court, or a series of courts with the special and limited jurisdiction of the county courts. If it could, the whole judicial fabric organized under the sixth article, would be superseded and subverted. New tribunals of justice, usurping and exercising the same power and jurisdiction, would effect this result substantially, without the formal abrogation of those now in being. The legislature are nowhere forbidden to exercise this power in express words. Nevertheless, it cannot be done; because the power has already been exerted by the people themselves in their sovereign capacity. Having proceeded, in the sixth article of the fundamental law, to establish the various courts and to define their jurisdiction, there is an implied prohibition that the legislature shall not do for them what they have already done for themselves. *Page 304 
This is not a question of the power of the legislature to pass laws of general application, acting immediately upon the rights of persons or of things, or the remedial process by which those rights are enforced and protected. The organic law has, with few exceptions, omitted to prescribe any rules of that nature. The point in controversy is upon the power of the legislature to organize new courts for the administration of justice outside of the incorporated cities, in addition to those enumerated in the sixth article.
An examination of the sixth article will show that it was designed to furnish a complete and perfect judicial system suitable to the public exigencies at the time, with some qualities of adaptation to the increase of the business and population of the state in the future. For the state at large, it provided a court of appellate jurisdiction in place of the Court for the Correction of Errors, and a Supreme Court with general jurisdiction in law and equity. For the counties, it provided county courts and courts of sessions with limited civil and criminal jurisdiction, and for the several towns, it recognized and retained the justices of the peace, with such inferior local jurisdiction as the legislature might confer upon them. At common law a justice of the peace had no civil jurisdiction and no judicial power. "His commission empowers him singly to conserve the peace; and therefore, gives him all the power of the ancient conservators, at common law, in suppressing riots and affrays, in taking securities for the peace, and in apprehending and committing felons and other inferior criminals." (1 Bl. Com.,
354.) The authority of the legislature to confer civil jurisdiction upon this class of magistrates is not given in express words; but it is to be implied from their possessing this jurisdiction at the time the constitution of 1846 was formed, and from the language of the fourteenth, seventeenth and twentieth sections of the sixth article, and from that of section ten of the fourteenth article. The design of a complete adaptation to the exigencies of the state at the time, *Page 305 
and to those which might arise thereafter, will be seen from the power given to the legislature by section sixteen, article sixth, to reorganize the judicial districts, and to increase or diminish their number from time to time, each having four justices of the Supreme Court, and to enlarge their number in a district to be composed of the City of New-York, where it was seen the business would concentrate and accumulate. Whenever new counties should be erected, they would each be entitled to a county court and a court of sessions, and when new towns were created, they in like manner, would be entitled to the usual number of justices of the peace, with the customary civil and criminal jurisdiction. There was, however, among the civil divisions of the state, one class to which the system, had it stopped here, was not entirely appropriate; and that was the incorporated cities. It was perceived that the tendency of the population, the wealth, and the business of the state would be to concentrate in the cities and the great commercial and manufacturing centres then in existence, or which should come into existence thereafter. The constitution does not itself create inferior courts of justice for this class of communities, because their utility and necessity, and the nature of their powers and authority depended upon conditions which could not be known and prescribed in advance. It therefore entrusted their institution and organization, and the nature of their jurisdiction to the legislature, simply requiring that it should be inferior, local and uniform, and subordinate to the courts of general jurisdiction established for the state. Section fourteen of the sixth article confers this power, and declares that "inferior local courts of civil and criminal jurisdiction may be established by the legislature in cities; and such courts, except for the cities of New-York and Buffalo, shall have a uniform organization, and jurisdiction in such cities." This provision, and that contained in section twenty-three in regard to tribunals of conciliation, contain the only grant of power to the legislature *Page 306 
to establish courts of justice. Expressio unius est exclusioalterius is a canon of interpretation. In statutes, ordinances and written instruments, the express mention of one thing implies the exclusion of every other. So the grant of power to the legislature to erect inferior local courts, of civil and criminal jurisdiction, in cities, is an implied prohibition of the power to erect them elsewhere.
Any part of a town or towns, not included within any incorporated village, and containing a resident population of not less than three hundred persons, may become incorporated as a village under the act of the 7th of December, 1847. If the authority which the legislature has exercised in respect to the village of Corning really exists, all these small communities may become the seats of inferior courts of civil and criminal jurisdiction. The only color for the existence of this power is to be found in the eighteenth section of the sixth article, where it is said that "all judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such manner as the legislature shall direct." The presence of the word villages, in this section, certainly does imply that there are judicial officers in villages, and that such officers may be created therein by law. Standing alone, however, in a section which relates exclusively to the election of certain officers, and not to the the erection of courts of justice, and unaided and unsupported, by any other words to be found in the instrument, it cannot be allowed the effect claimed for it. The express grant of the power, in respect to cities, must be construed into a prohibition of the same power in respect to villages.
It was said by the learned justice who decided the case at the special term, that "a police justice of a city or village is nothing more nor less than a justice of the peace, restricted as to his powers and local jurisdiction." I respectfully submit that there can be no such officer, out of the incorporated cities, as a justice of the peace restricted *Page 307 
in his powers and jurisdiction. He is in every sense a town officer. He is so designated in the statute concerning the election of town officers. (1 R.S., 336.) He is to be elected by the electors of the town at the annual town meeting, and is to hold his office for the term of four years, pursuant to the seventeenth section of the sixth article of the constitution. The police justice of the village of Corning is not denominated a justice of the peace, in the act which authorizes his election. He is not elected for the term of four years but for one year. He is not elected at the annual town meeting, by the electors of the town, but at the election held for the village of Corning, by the electors thereof, which is a part only of the town of Painted Post. Some of his powers are new and anomalous, and unlike those of the justices elected under the constitution. He is just what the legislature designed he should be, a new officer, owing his existence, and deriving his jurisdiction exclusively from its power and authority.
The judgment and proceedings in the court below should be reversed.
COMSTOCK and SELDEN, Js., concurred in this opinion.
Judgment affirmed.